All right, case number 7 for today is Barrett against Acting Commissioner Barry Hill, S.C. May it please the Court, my name is Stephanie Siebold and I am here today representing John G. Barrett, the petitioner in this case. Mr. Barrett's anxiety, bipolar disorder, and depression improved to the point of non-disability only after a structured intervention which enabled him to develop coping skills other than alcohol abuse. Prior to Mr. Barrett's stay at the Rescue Missions Men's Recovery Program, multiple interventions were unsuccessful in enabling him to overcome his symptoms. These interventions included ER treatment, inpatient treatment at Rosecrantz, and treatment with a psychiatrist. So what's the evidence that when he was at the Las Vegas facility, he was being treated for his mental health problems in addition to his alcohol dependence? Yes, Your Honor, we have the counseling notes in the record related to his stay at the mission and those counseling notes focus on a variety of mental health symptomatology including his coping skills, his interactions with his family, he talked about some paranoia, he did get counseling there. And they labeled him, did they not, at mission as a person suffering from a co-occurring disorder, disorders, co-occurring disorders, plural. Correct, and Mr. Barrett also filled out... In other words, I think they label alcoholism by itself if that's all it is, if there's a co-occurring situation that would imply two or more, right? Right, right, and he did in his intake paperwork refer to how he felt that there was this interrelation between his bipolar disorder and his anxiety with the alcoholism. So this 13-month-long program included structured classes, case management, and the counseling sessions that I just mentioned. Plaintiff also was suffering from grief over his brother's suicide, which had, I think, affected him for a long time. He worked through his anger and depression, and as I said, interpersonal conflicts with his spouse and his family. I would say that the therapy notes, while they do mention his alcohol use and sobriety, it's not a predominant theme in those counseling notes with the mission. It's mentioned, but I wouldn't say that the mental health takes a backseat to the alcoholism in those therapy notes. The law requires, in a sense, the alcohol to take a backseat, right? Didn't Congress make the determination that people who are suffering from alcohol or drug addictions are... It's not that they're disqualified, but there needs to be something else that you hang the qualification on. Right, absolutely. With the... Congress did enact, I think, around the late 90s, this policy or these rules that you couldn't get disability just for alcoholism alone. I think that Mr. Barrett's case, well, alcoholism was something that certainly was focused on. It's self-harm when you're drinking alcohol at copious amounts. He also has the mental health issues that he's treated for with his psychiatrist. There was a reference in the record, and I believe it was in the ALJ's report, that therapy notes had not been submitted to the ALJ in connection with his stay in Las Vegas. Are there additional notes from a therapist at the facility that were not submitted as part of the record? So I believe that he saw an outside therapist at the Renewing Life Center, and I believe that was in the record either at the time of the hearing or immediately thereafter, and then there were also... So that's in the F section of the exhibits. Then there are additional therapy notes in the mission, and those are in the E exhibits of the record, and those, I believe, were submitted not only after the hearing, but then we also filed a supplemental... We also filed with the district court while this case was pending to have those added to the file, because I don't know that they were... Some of the notes from the mission itself were in the file, but the notes from the Renewing Life Center were in the file. So were there additional notes from the mission that were never put into the record from seeing a therapist? I think they were ultimately put into the record, but I don't know that they were filed with the district court in the transcript. I think there was an error. Did the ALJ have the opportunity to review them? I believe so. I wouldn't say that she didn't. And that might take us to Dr. Garcia, because he regularly refers to Mr. Barrett as somebody with a primary psychiatric condition with a secondary substance use disorder, and the ALJ doesn't find this a persuasive account, I guess because Dr. Garcia doesn't have extensive enough notes or something. Can you discuss that? Yeah, so there are three opinions in the file from Dr. Garcia which support that Mr. Barrett was disabled during the close period of disability for which he applied. Dr. Garcia first wrote an opinion letter on August 8, 2013, in which he said Mr. Barrett was totally and completely disabled due to his co-occurring medical conditions. He wrote a second letter in March of 2014 and said that his patient was unable to function through the close period of disability, and in the third letter, he said that Mr. Barrett was incapable of activities of daily living and social functioning during the relevant timeframe. So the judge discounted Dr. Garcia's opinions because she thought that his opinions indicated that plaintiff was less capable than he actually was during the relevant timeframe. However, that the activities that she focused on were pretty, I'd say, basic activities. He's reading at the mission, which is apparently a leisure activity. She mentioned that she disagreed with Dr. Garcia's referring to Mr. Barrett as having issues with hygiene. But he was in a very controlled environment at the mission. Absolutely, Your Honor. And I don't know that they, you know, took note of whether or not he had hygiene issues at the mission or not, but he certainly had the time to focus on recovery, not only for the substance abuse, but also for the mental health as well. But didn't the counselor's notes suggest that he was able to take care of his basic hygiene, that he got himself up, took care of himself? I think that there is evidence in the file that he did maintain hygiene at times, but there's also function reports from his dad in the file, which says that he couldn't do it in this time frame, that he was not able to live on his own, that he barely went outside. But that's a separate issue from the hygiene issue. I didn't see anything in the record supporting that when he was at the facility, he couldn't take care of his hygiene and basic needs. In fact, it seemed like it was exactly the opposite. Right. I don't know that I disagree with you on that, Your Honor, but I don't know that they fully documented, you know, every day what his hygiene looked like. It seemed to me that they were more focused on his coping skills. So the question, I think, is then whether we just have an absence of information or whether you actually have conflicting information between what Dr. Garcia says and what somebody else says about the hygiene. Correct, Your Honor. Which do you think it is? Do you think it's just a lack of information, or do you think there's an actual conflict? I think that there's mostly just a lack of information. There may be conflicts at times, but that's not uncommon in any, you know, disability record. He may have had good days and he may have had bad days. Also wanted to... Can I ask you a little bit of a bigger picture question before you continue, and that is when I look at this record, there's a very dark and sad period for Mr. Barrett, and it He is able to turn a corner and is, I understand, living a productive life right now as a lawyer, right? Correct. Okay. Every indication, though, in the fact pattern, when you read it at a narrative level, looks like he just slipped into a period of very severe dependence on alcohol after his brother took his own life. Why is that not the right way to read this record? Well, Your Honor, well, certainly he struggled with the alcohol abuse. And I think that in this record that Mr. Barrett and his family have both consistently said that he was struggling with the mental health significantly after his brother committed suicide, and that this then triggered him to go into this downhill spiral. I think it's always hard in any record to separate, you know, the two, but... Who bears that burden? The judge bears the burden of first going through the sequential evaluation and then going through the six-step materiality analysis, which I believe that she failed to do in this case. So I see my time is nearing an end. If I could just reserve a minute for rebuttal? I'll give you a minute. You've used it, but I'll give it to you. Okay, thank you. Ms. Malia? Good morning. May it please the Court. My name is Sarah Malia, and I appear today on behalf of the Acting Commissioner of Social Security. Congress has decided, and as the Court has pointed out, that if a disability claimant is an alcoholic and would not be disabled absent alcohol abuse, he or she cannot receive disability benefits. So the trick is, which way does the causation arrow run? Because if he's a person with mental health problems and then secondarily, you know, self-medicates them with alcohol, then he can get benefits. If he's an alcoholic who also at the same time, but in a lesser sense, has mental health issues, then he can't get benefits, which makes it really important to look at the professional evidence in the records, since this surely seems beyond the ability of laypeople to sort out. And that takes me to Dr. Garcia's letters. The ALJ is very curt with them. I don't know what justifies the total disregard of Dr. Garcia's opinions. Your Honor, speaking of Dr. Garcia's opinions, I think a good way to look at it is to look at the first of Dr. Garcia's letters, which comes in February 23rd of 2013. And this is shortly after Mr. Barrett leaves the mission facility. Dr. Garcia at that time indicates that at the facility, at the mission, Mr. Barrett was able to work on his issues, get more seriously involved with AA, work on his spirituality and recovery from alcohol dependence. He feels that his recovery work has played a major role in managing his mood without medications. He's reconciled with his wife. They're now living together. He's working for his father, who's an attorney. He took the ELSA and is planning to go to law school. Over time, Dr. Garcia's, and you see, I believe there are four letters that he writes that portray a different condition when Mr. Barrett was in the mission facility. However, when you look to Counselor Bloom's own treatment records while Mr. Barrett was in the facility, as Judge St. Eve pointed out, there is no evidence in the record that Mr. Barrett was having difficulty with his mental health limitations aside from... which is a different program from the alcoholism program. I believe when he went into the mission, the mission intake records directly indicate that his alcohol abuse is the primary condition, and yes, the ALJ did find that he has severe impairments of bipolar disorder, PTSD, but the alcohol abuse here is, we would argue, the most substantial issue, and that's not even really the question. What is the question here is, would he be disabled absent that alcohol abuse? And here, what we have and what the ALJ had is an extended period of time, a three-and-a-half year period of time, where we... and there's no dispute that Mr. Barrett had stopped using alcohol and was functioning very highly. As you stated, he's to be commended. This is a success story, but what that means is that during that closed period of disability for which he's seeking benefits, we, the ALJ, had this period that showed... So you think it's impossible that they fixed his psychological conditions and the alcohol use stopped as a result of that? I wouldn't say that that's impossible, but... But that theory isn't discussed by the ALJ? The... that's... yes, Your Honor, that's right. What the ALJ does... And his life is good, and so, ergo, it was the alcohol. But actually, if his psychological conditions got brought under control, then his impulse to go to the alcohol would have also been brought under control. And so you would actually have the same person that you have today, somebody who is living a useful life and who is, in fact, not dependent on alcohol. A couple of things. I think that the ALJ... The ALJ does, when he's talking about, and when she's talking about Dr. Garcia's opinion, point to that, to Dr. Garcia's exact point, that his mental health conditions were the, as Dr. Garcia says, primary issues, and alcohol abuse was a secondary issue. The ALJ speaks to that and explains why the record does not show evidence of that. When you... All of the record evidence... And I apologize if I didn't answer the complete question there. Please let me know. But all of the record evidence shows that Mr. Barrett was... That his alcohol abuse was the primary reason for his issues here. He did... The ALJ just... I'm looking at that paragraph. It's on page 13 of the ALJ's opinion. The undersigned gives no weight to Dr. Garcia's letters of support. Then we have the point about hygiene, group therapy, individual therapy, his diet, concentration, persistence, or pace. They love that. Apparently, he, at some point, obviously, takes the LSAT. The working full and part-time for his father didn't really get me too far,  you're really probably not in the same situation you're in with an outside employer. To that point, Your Honor, if I can, the... Well, that's correct. And generally, in these sorts of cases, that's an issue. Here, Mr. Barrett testified to what he was doing when he was working at his father's law firm. He's summarizing depositions. He's doing the work of a legal...of a law clerk. And he indicated that that was difficult for him, but that he was able to do it. And so there's... All of the records from the mission indicate that alcohol abuse is the primary issue here. But certainly, even if the issues were equally Mr. Barrett's issues, when we have the period of time where he's sober and we see that his ability to function very highly during that time, that shows us that, absent the alcohol abuse, he is able to function... Well, his GAF scores are terrible. Now, I know that the DSM-5 has given up on GAF and the DSM-4, which was in effect at this point, did use them. The ALJ doesn't choose to pay any attention to that either. I think that the ALJ does address that and indicate that he's not giving... The GAF score is entitled to little weight in the disability process. That's right. And he says in the next paragraph that he's giving minimal weight to the September 2012 CE GAF score of 50. And if you look to that GAF score, the consultative examination, and this is at pages 425 to 429 of the record, the consultative examiner indicates in the body of his or her decision that prognosis from Mr. Barrett is guarded while he progresses through this long-term residential alcohol recovery program. The consultative examiner's opinions are, when you read that report, based on his continued recovery from alcoholism. And so I think the ALJ was correctly, in the decision, discounted the GAF score and explained why she did so. Did she explain why? It didn't seem she said she was giving little weight to it. Sure. So I believe that she does. Page 23 of the record at the very bottom, after she talks about the GAF scores not being relevant to these disability determinations, she says the undersigned gives minimal weight to the GAF score of 50 and explains that Mr. Barrett, on testing by that consultative examination, was able to demonstrate perfect performance for alphanumeric counting. Right, but let's just stop there for a minute. Because if somebody is, let's just, a hypothetical person, is clinically depressed, you might actually be able to do serial backwards sevens. You might be able to remember three things on a tray 10 minutes later or seven things on a tray. But you also might be unable to drag yourself out of bed in the morning and show up at work. They're really different aspects of things. And so when she says, I'm not going to count the GAF score because he can do alphanumeric counting, intact memory, and average intellectual ability, I have an apples and oranges feeling about that statement. So I think if you continue on to her statement on page 24, the next page, the ALJ talks specifically about Mr. Barrett's functioning and that he is able. He takes the LSAT and the ALJ thinks 143 is a great score in the LSAT. I don't know where she went to law school. Your Honor, I don't disagree with that assessment. I don't know that it. She says it repeatedly. The government repeats it. 143? Yeah, Your Honor, that's probably right. But the reality is Mr. Barrett got into law school and has since graduated and is a practicing attorney. But just finishing on that thought, the ALJ indicated that after six months of treatment, he's working full-time. He testifies that he's working a guard job. And then later, because he's so high-functioning, he's able to manage the attendance for 100-plus residents and work with the assistant director at the mission. But I place no weight on that. He's in a structured environment. He's checking off who shows up at church. I mean, really, aren't we blowing this out of proportion? I don't think so. I think that what we have here is a clear case, and the ALJ had one of the more clear cases. Well, I could probably ask my six-year-old granddaughter to do that, and she'd be happy to do it for you. I think that in terms of disability and the requirements for an individual to be disabled, Mr. Barrett was very high-functioning and able to and was not disabled, whether be it before, during, or after his stay at the mission. If the court has no further questions. All right, thank you. Ms. Siebel, you'll have a minute. Thank you, Your Honor. I just want to focus on the fact that I think that the district court and the commissioner focuses on the fact that he had this period of abstinence after the commission, and there's some citing to SSR 13-2P to support that. Oh, we've got this period of abstinence. He's improved. Automatically, it shows that he was never mentally disabled, and I think that it should be noted that SSR 13-2P, well, it does refer to periods of abstinence. At the part where the SSR actually says that abstinence is a really good piece of evidence to look at, it's actually referring to physical impairments at that part. There's no doubt that the SSR mentions periods of abstinence, but I don't think that the ALJ should have focused on it as extensively as she did to show that there was improvement. So I would just point to that, and if there are no further questions, I'll conclude and ask for remand. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement. Thank you.